[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10250

_____

SHELLY MILGRAM,
a.k.a. Shelly Jaspan,

Plaintiff-Counter
Defendant-Appellant,

*versus*

CHASE BANK USA, N.A.,

Defendant-Counter
Claimant-Third Party
Plaintiff-Appellee,

2                    Opinion of the Court                    22-10250

CAPITAL ONE BANK (USA), N.A.,
et al.,

                                                          Defendants,


DEC THE WALS INTERIORS, CO.,
a/k/a Yolo Interiors,

                                          Defendant-Third Party
                                            Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-60929-AMC

_____

Before ROSENBAUM, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

This is a case about square pegs and round holes. Or it could be about how, to a hammer, everything looks like a nail. The point is this: the Fair Credit Reporting Act has some important applications. But its cause of action isn't a great fit for the dispute here. Let us explain.

Shelly Milgram's employee opened, in Milgram's name, a credit card with Chase and ran up tens of thousands of dollars in debt. The employee also illegally accessed Milgram's bank accounts and used them to partially pay off the monthly statements.

When she discovered the scheme, Milgram reported the fraud to Chase, but Chase refused to characterize the charges as illegitimate. In Chase's view, the fact that Milgram's bank accounts had consistently paid for charges on the card had vested "apparent authority" in the employee to incur those charges. Although Milgram disputed that determination (and provided proof that the employee had pled guilty to multiple felonies), Chase refused to change its mind.

So Milgram sued Chase under the Fair Credit Reporting Act for not conducting a reasonable investigation into her dispute. The district court granted summary judgment for Chase because it concluded that Chase's investigation into Milgram's dispute was "reasonable," as the Act requires.

After a thorough review of the record, and with the benefit of oral argument, we affirm. Milgram has not identified any investigatory steps Chase failed to take that made Chase's investigation unreasonable.

## I.    BACKGROUND
### A. Factual History

Shelly Milgram owns and operates Dec the Walls Interiors (which does business as "Yolo Interiors"), an interior-design

company in Florida. In 2013, Milgram hired Jean Williams to be an office manager. Milgram did not authorize Williams to handle credit cards, make payments on those cards, or access bank accounts. As for her bank account usernames and passwords, Milgram kept those in an unlocked file cabinet in her office and expressly told Williams not to open the file cabinet. Yolo Interiors had two checking accounts—with Bank of America and Sun-Trust—and a Chase business credit card. For the Chase business card, Milgram set up automatic payments from Yolo Interiors's checking accounts to pay $350 every month.

Williams opened three credit cards in Milgram's name without Milgram's knowledge or permission: a Chase personal credit card, a Capital One card, and a Comenity Bank card. As Williams set it up, Milgram was the owner of the Chase personal card and Williams was an authorized user. Between 2014 and 2016, Williams used the three credit cards, as well as Yolo Interiors's Chase business card, for personal purchases. When the bills came due, Williams made payments on the cards from Yolo Interiors's checking accounts.

In May 2016, Milgram noticed a charge on her Bank of America app—from Yolo Interiors's checking account—that she didn't recognize. This alert led Milgram to review her credit. When she did so, Milgram discovered the other three (unauthorized) credit cards in her name. Milgram called Chase to informally report the fraud. Chase, in turn, called Williams, and Williams "told the lady on the phone that—that she made all the charges,

that it was fraud; that [Milgram] wasn't responsible for it." Milgram also reported the fraud to Comenity Bank and Capital One and filed a police report.

Then Milgram formally reported the fraudulent card (the Chase personal card) and the fraudulent charges (on the Chase business card) to Chase in June 2016. In support of her fraud claim, Milgram submitted text messages from Williams admitting to the fraud, the police incident report, and screenshots from the bank accounts.

Chase's fraud investigation team looked into Milgram's claim. In general, Chase uses a set of criteria—created by its legal department—to determine whether charges were fraudulent. If one criterion is satisfied, then Chase holds the accountholder responsible. As a part of its evaluation, Chase considers whether payments were made on the account and if so, whether the payments came from an account owned by the customer. In Milgram's case, Chase found that the cards were paid for by bank accounts Milgram controlled: Yolo Interiors's Suntrust and Bank of America checking accounts. Chase also confirmed that Milgram owned Yolo Interiors. Given that the credit cards were paid by accounts Milgram controlled, Chase determined, Milgram was liable for the charges. In other words, because Milgram's accounts had paid off the credit card, Chase concluded that Williams had apparent authority to use the cards, and Chase therefore held Milgram liable for the outstanding balance—then around $ 30,000. Chase "gave . . . consideration" to the fact that a state attorney was prosecuting Williams

for identity theft but ultimately concluded that that was not suffi-cient evidence to overcome the apparent authority.[1]

Milgram filed a dispute with the national credit-reporting agencies—Equifax, Transunion, and Experian—in August 2016. The credit-reporting agencies, as they were supposed to, for-warded the dispute to Chase.

For a dispute coming in from a credit-reporting agency, a different Chase team—the Automated Consumer Dispute Verifi-cation ("Dispute Verification") team—investigated. The Dispute Verification team's "investigation" consisted of verifying that Chase's data on Milgram, her date of birth, Social Security number, and other personal information, matched the credit-reporting agency's data. Because it did, Chase verified that Milgram indeed owed the money.

Over the next few years, Milgram continued to file new dis-putes—both directly with Chase and indirectly through the na-tional credit-reporting agencies—but received the same result each time.

Meanwhile, in October 2018, Jean Williams pled guilty to seven counts of grand theft in the second and third degree, criminal use of personal identification information, and defrauding a

---

[1] On the other hand, Comenity Bank and Capital One stopped reporting the cards to credit reporting agencies after receiving Milgram's disputes.

financial institution.  She was sentenced to three years' incarceration followed by ten years of probation.

A Florida state court issued an order recognizing that Williams had fraudulently opened the Chase personal card and had transferred money to pay the balances without Milgram's permission.  The court "recommend[ed] that Equifax, Experian and TransUnion remove any negative charge offs and negative delinquencies" from Milgram's credit history.

With this order in hand, in November 2018, Milgram filed another dispute with Chase (followed by another inquiry in December 2018), attaching the Florida state court judgment and order.  Chase re-verified that Milgram was responsible for the account because (in Chase's words in responding to the December inquiry) "[w]e received payment(s) on this account."

## B.  Procedural History

On April 10, 2019, Milgram sued Chase for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*[2]  In lay terms, the Fair Credit Reporting Act requires "furnishers" of credit information—like Chase—to conduct a "reasonable" investigation

---

[2] Milgram sued other defendants but either settled with or dismissed those defendants.  The district court also dismissed Milgram's other claims against Chase.  And while Chase asserted counterclaims against Milgram and third-party claims against Yolo Interiors, the district court declined to exercise supplemental jurisdiction over those claims.  Having assured ourselves that a final judgment has been entered, we omit discussion of the claims not at issue in this appeal.  *See* 28 U.S.C. § 1291.

when the subject of the information (here, Milgram) challenges the accuracy of the information. In her case, Milgram said, Chase was liable for conducting an unreasonable investigation of her disputes.

Chase moved to dismiss Milgram's claim as time-barred under the two-year statute of limitations. *See* 15 U.S.C. § 1681p. The district court denied Chase's motion. It recognized that district courts were divided on the question of whether—when a plaintiff submitted multiple disputes—a second or subsequent dispute reset the statute of limitations or whether only disputes with new material information reset the limitations period. The district court held that Milgram's later disputes were timely because "each dispute contained new information provided by [Milgram] to the credit reporting agencies (and thereafter to Chase)." So, the district court concluded, disputes made after April 10, 2017—two years before the complaint was filed—were timely filed.

The parties cross-moved for summary judgment. Milgram argued that, given the ample evidence that she hadn't authorized Williams to open or use the card, Chase's conclusion that she was liable showed that Chase's investigation was inadequate. Chase, Milgram pointed out, did not contact the police or the state attorney prosecuting Williams and had ignored the state-court order adjudicating Williams guilty. Chase countered that it couldn't be liable under the FCRA for a disputed *legal* question. In other words, Chase argued that Milgram's dispute about whether Chase could hold her liable for Williams's conduct just wasn't the kind of issue

cognizable under the FCRA.  And even it were, Chase continued, it had conducted a reasonable investigation.

The district court granted Chase's motion and denied Milgram's.  The district court concluded that Milgram hadn't identified any other steps Chase could have taken or evidence it should have considered.  That Milgram disagreed with Chase's conclusion, the district court said, didn't mean that Chase's investigation was unreasonable.

Milgram now appeals.

## II.　STANDARD OF REVIEW

We review grants of summary judgment de novo.  *Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1317 (11th Cir. 2022).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (quoting FED. R. CIV. P. 56(a)).  On summary-judgment review, we view all evidence in "the light most favorable to the nonmoving party" and draw "all justifiable inferences in that party's favor."  *Id.* (quotation omitted).

## III.　DISCUSSION

Milgram argues that the district court erred in suggesting that her disputes weren't cognizable under the FCRA because they were legal disputes and in holding that no genuine issue of material fact existed as to whether Chase's investigations of Milgram's disputes were reasonable.  We agree with the district court on the latter point and so affirm. We split our decision into three parts.  First,

we describe the operation of the FCRA. Second, we explain why Milgram's claims are timely. And then, third, we apply the FCRA's requirements to the facts in this case.

### A. The Fair Credit Reporting Act

Congress enacted the Fair Credit Reporting Act to protect consumers from unfair reporting methods while also ensuring that the credit system would retain the accuracy required by the banking system to efficiently allocate credit. 15 U.S.C. § 1681.

At the outset, we must define two groups that the FCRA refers to: "consumer reporting agencies" ("reporting agencies") and "furnishers." *Id.* §§ 1681a(f); 1681s-2(a). A "consumer reporting agency" is a person or organization that assembles credit reports. *Id.* § 1681a(f). Here, think of Equifax, Experian, and TransUnion. "Furnishers," on the other hand, are people or organizations that give consumer information (furnish it) to those reporting agencies. *Id.* § 1681s-2(a). Furnishers can be creditors (banks, landlords, or anyone else) or third-party debt collectors.

Under the FCRA, furnishers have a duty not to furnish information about a consumer to a reporting agency if the furnisher "knows or has reasonable cause to believe" that the information is inaccurate. *Id.* § 1681s-2(a)(1)(A). So if a furnisher learns that its information is inaccurate, it must notify the reporting agency and stop furnishing the information. *Id.* § 1681s-2(a)(2).

Consumers can dispute the accuracy of the information in their credit reports in one of two ways. Consumers can dispute the

22-10250                Opinion of the Court                11

accuracy or completeness of information in a credit report (1) directly with the furnisher or (2) indirectly with the credit reporting agency (who then forwards the dispute to the furnisher). *See* 15 U.S.C. § 1681s-2(a)(8) (directing the CFPB to promulgate regulations for direct disputes); 12 C.F.R. § 1022.43 (regulations related to direct disputes); 15 U.S.C. § 1681i(a)(2) (relating to indirect disputes).[3]

Upon receipt of a dispute, the furnisher must conduct a "reasonable investigation" into the information's accuracy.[4]  *Id.* § 1681s-2(b); *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301–02 (11th Cir. 2016).  A furnisher's investigation produces one of three outcomes so that afterwards, the furnisher can do one of three things:  (1) verify the information as accurate; (2) determine that the information is wrong or incomplete, or (3) determine that the information cannot be verified.  15 U.S.C. § 1681s-2(b)(1)(D)–

---

[3] We've recognized that the FCRA supplies a cause of action for indirect disputes—meaning disputes against furnishers for not conducting a reasonable investigation after receiving notice of a dispute from a credit reporting agency. *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018).  Milgram sues Chase for not conducting reasonable investigations of her indirect disputes.  We therefore do not consider whether there is a cause of action for not conducting a reasonable investigation after receiving a direct dispute.

[4] And while the investigation is ongoing (in other words, while the information is disputed), the furnisher must alert the reporting agency that the furnished information is disputed.  *Id.* § 1681s-2(a)(3).

(E).  In the second and third cases, the furnisher must modify or delete the information.  *Id.* § 1681(b)(1)(E).

Still, though, we've held that consumers cannot sue furnishers for providing inaccurate information—only for conducting unreasonable investigations.  *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018) ("Consumers have no private right of action against furnishers for reporting inaccurate information to [reporting agencies] regarding consumer accounts. . . . Instead, the only private right of action consumers have against furnishers is for a violation of § 1681s–2(b), which requires furnishers to conduct an investigation following notice of a dispute."); 15 U.S.C. § 1681s-2(c)(1) (providing that there is no liability for violating section 1681s-2(a)).

What constitutes a "reasonable" investigation varies based on the circumstances.  *Hinkle*, 827 F.3d at 1302.  For instance, the furnisher's identity matters to that calculus.  *Id.*  And whether the furnisher is "an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer" can affect how we evaluate the reasonableness of its investigation.  *Id.*  Another circumstance we consider is what information the furnisher has available to it and what steps it takes to gather more information.  *Id.* at 1303 ("For instance, a debt buyer with account-level documentation or more comprehensive warranties from its predecessor debt buyer might be in a completely different position than [a third-party debt collector].").  Finally, while consumers cannot sue directly for the outcome of an

investigation, if a furnisher verifies an account, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Id.*

To succeed on an FCRA claim, a plaintiff must establish (at least) two things. *First*, a plaintiff cannot recover on a § 1681s-2(b) claim without identifying inaccurate or incomplete information that the furnisher provided to the reporting agency. *Felts*, 893 F.3d at 1313. And *second*, to prove an investigation was unreasonable, a plaintiff must point out "some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete." *Id.*

### B. Timeliness

Chase argues in the alternative that Milgram's claim is untimely because she brought it after the statute of limitations expired.[5]

Chase concedes that (maybe) a new dispute could trigger a new limitations period, but it asserts that could be the case only if the new dispute has new material information—which it says Milgram didn't provide. We are unpersuaded.

The FCRA provides that consumers must file suit within the earlier of "2 years after the date of discovery by the plaintiff of the

---

[5] We don't address whether the time limit is jurisdictional because, even if it is, Milgram's claims are timely.

violation that is the basis for such liability" or "5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p(1)–(2).

Both time limitations are triggered by "the violation that is the basis for such liability." *Id.* Here, the violation that triggers liability isn't the dispute, it is the unreasonable investigation. *Felts*, 893 F.3d at 1312. So every time a furnisher fails to conduct a reasonable investigation, it can be liable for doing so.

We are unaware of any circuit-court authority to address this question, but we find Judge Hudson's decision in *Broccuto* persuasive. *Broccuto v. Experian Information Solutions*, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008). As Judge Hudson observed, the statute provides that furnishers "shall" conduct an investigation. *Id.* (citing 15 U.S.C. § 1681s-2). He continued that "[t]he statute's construction creates a violation every time a consumer submits a dispute to a credit reporting agency and that agency or the relevant lender does not respond to the complaint as directed by the statute." *Id.* Judge Hudson concluded that "[t]he fact that the account or transactions questioned in the instant dispute may have also been the subject of a previous dispute does not mitigate the obligations of the bank or credit reporting agency to take the actions outlined in § 1681s-2(b)(1)(A)-(D)." *Id.*

Precisely. Because it is the unreasonable investigation that triggers liability, whether the dispute involves new information is irrelevant to the statute-of-limitations question.

22-10250                Opinion of the Court                15

Chase's counterargument and authorities do not alter the analysis. They all boil down to the same fear: that consumers could continually reset the statute of limitations by filing new disputes.

But even if that were a legitimate concern, nothing in the statute allows us to consider it. Indeed, Chase's solution is atextual. The statute includes no "new-material-information" requirement. Rather, the statute requires furnishers to conduct investigations upon receipt of a dispute—whether or not a dispute involves new material information. "We are not allowed to add or subtract words from a statute; we cannot rewrite it." *Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1309 (11th Cir. 2021) (quotation omitted). Maybe Chase's rule makes sense, but "[i]f Congress wanted" that rule, it should have written it that way. *Id.* "Nothing is to be added to what the text states or reasonably implies." A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF STATUTES 93 (2012). And here, all the text requires and reasonably implies is that the furnisher has an obligation to conduct a "reasonable" investigation when a consumer disputes reported information. So we cannot (and do not) amend Congress's statute to apply Chase's preferred version.

In any event, we aren't concerned about a practical problem with our holding for three reasons. *One*, the FCRA has an offramp for frivolous or irrelevant disputes. 15 U.S.C. § 1681s-2(a)(8)(F); 12 C.F.R. § 1022.43(f). If a consumer continually resubmits disputes without providing new information, a furnisher can deem the

dispute irrelevant or frivolous.    15 U.S.C. § 1681s-2(a)(8)(F); 12 C.F.R. § 1022.43(f).    *Two*, as we explain below, courts look at each dispute in context, so in the case of a repeated dispute with no new material information, perhaps only minimal (or no) reinvestigation might be "reasonable."  And *three*, the Consumer Finance Protection Bureau—which is tasked with administering the FCRA—found in its annual report that, after analyzing of hundreds of thousands of consumer complaints, consumers often needed to file multiple disputes to resolve an issue.  So creating a "one shot" statute of limitations would, in addition to being atextual, frustrate Congress's goal of trying to defeat "abuses in the credit reporting industry." *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  Having assured ourselves that we have jurisdiction, we turn to the merits.

### C. Analysis

To obtain reversal, Milgram must show both (1) that the error in her credit report—that she owed Wells Fargo money for the charges on the credit card—is a cognizable inaccuracy under the FCRA and (2) that Chase's investigation into her dispute was unreasonable.  Our analysis assumes without deciding that legal inaccuracies can be so clearly erroneous as to raise a claim under the FCRA.  But because Milgram cannot show that Chase's investigation was unreasonable, she cannot prevail, even with this

assumption. So we do not consider whether, in fact, legal inaccuracies can, under certain circumstances, raise a claim under the FCRA.[6]

Milgram can sue Chase based on its investigations into Milgram's based on its investigations after April 10, 2017—everything else is time-barred. 15 U.S.C. § 1681p. By April 2017, Chase had determined that Milgram had vested apparent authority in Williams to use the credit card. So that is our baseline.

To challenge that conclusion, Milgram gave Chase the criminal judgment proving that Williams was guilty of impersonating Milgram. But that criminal judgment didn't impact Chase's conclusion because Chase had always known that Milgram alleged that Williams lacked *actual* authority to incur charges on Milgram's behalf. Chase had instead concluded that Williams had *apparent* authority to do so.[7]

---

[6] Milgram also contends that the district court misapplied the summary-judgment standard because the district court assumed that the presence of cross-motions for summary judgment reflected a concession by the parties that no genuine issues of material fact existed. We agree with Milgram that the mere fact that both parties have filed motions for summary judgment does not necessarily mean that no material disputes of fact exist. But we need not consider whether the district court here made that assumption because even if it did, on this record, no material disputes of fact exist, and Chase is entitled to summary judgment.

[7] Actual authority exists when the principal actually provides an agent authority to act on her behalf. *Fla. State Oriental Med. Ass'n, Inc. v. Slepin*, 971 So. 2d 141, 145 (Fla. Dist. Ct. App. 2007). Apparent authority arises where the

Apparent authority——under Florida law, because Milgram lives in Florida—is a form of estoppel. *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 31 (Fla. Dist. Ct. App. 2011). To prove apparent authority, a litigant must show all the following: "(a) a representation by the purported principal, (b) a reliance on that representation by a third party, and (c) a change in position by the third party in reliance on the representation." *Id.* at 32. When Milgram filed her dispute with Chase, Chase had determined that (a) bank accounts controlled by Milgram had consistently paid down balances on the card; (b) Chase had furnished credit to an authorized user on the card; and (c) Chase had paid money to third-party vendors based on that reliance. So Chase determined that Milgram had vested Williams with apparent authority to use the card.[8]

The question we must answer is this: what import (if any) did Williams's criminal judgment have on that conclusion? We don't think the criminal judgment was relevant to Chase's apparent-authority determination. To be sure, Williams's criminal judgment proved that Williams lacked actual authority. But Milgram's automatic payments to pay off the card each month led Chase to conclude that Williams had authority to incur those charges. That Williams didn't *actually* have that authority doesn't undercut that conclusion; it doesn't go to apparent authority at all.

---

principal holds out the agent as having authority, but the principal doesn't intend to vest the agent with authority. *Id.*

[8] We express no opinion on the correctness of that determination.

Indeed, Chase was already aware of the criminal investigation into Williams. Chase "gave . . . consideration" to the fact that Williams didn't have actual authority to incur those charges but decided that the lack of actual authority didn't affect the apparent authority that Milgram's omissions had vested in Williams.

Given this earlier determination, Williams's criminal conviction isn't relevant to Chase's conclusion. As a result, Chase didn't need to keep investigating. Nor has Milgram explained what Chase should have done differently: whom it should have talked to or what documents it should have considered that might have affected its apparent-authority analysis. That omission dooms Milgram's claim because "a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete." *Felts*, 893 F.3d at 1313.

## IV.   CONCLUSION

Shelly Milgram sued Chase for not conducting a reasonable investigation into whether Milgram was responsible for the debt incurred on a Chase credit card. While Milgram disagrees with Chase's conclusion, Milgram hasn't shown a genuine dispute of fact whether Chase's conclusion was unreasonable as a matter of law.

**AFFIRMED.**

22-10250                ROSENBAUM, J., Concurring                1

ROSENBAUM, Circuit Judge, Concurring:

The ultimate resolution of this case is surely frustrating for some consumers. But I don't believe this outcome leaves a consumer in Milgram's position without recourse. Rather, I believe a consumer in Milgram's shoes could properly use a declaratory-judgment action to challenge a determination like the one Chase made here. *See* 28 U.S.C. § 2201(a).

A declaratory judgment allows a federal district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)).[1]

Using this case as an example, I conclude that a declaratory judgment would be proper here because Chase could sue Milgram for the money it says that she owes. So in reverse, Milgram can sue Chase for a declaratory judgment that she doesn't owe Chase money. And Chase's furnishing of the debt information is damaging Milgram even aside from the debt Chase says is looming over her head. Milgram alleged that banks denied her credit or gave her credit on worse terms because of the debt on her credit report. This fact pattern—seeking a declaration that no legal relationship

---

[1] This type of action may be able to proceed in only state court unless the plaintiff can satisfy federal diversity jurisdiction. 28 U.S.C. § 1332(a); FLA STAT. § 86.011 (Florida Declaratory Judgment Statute).

between two parties exists—is similar to the very familiar fact pattern where an insurance company seeks a declaratory judgment that no coverage exists under an insurance policy, to preempt a breach-of-contract action by the (potentially) insured. *See, e.g.*, *Travelers Prop. Cas. Co. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014).

Here, Chase asserts that Milgram and Williams had a principal-agent relationship and Chase reasonably relied on Milgram's payment for Williams's expenses, so Milgram is liable for those expenses through apparent authority. Milgram, of course, disagrees. But the point is this: the dispute here isn't really about whether Chase did an adequate investigation; it is about whether Chase came to the right conclusion. Under the FCRA, a furnisher's conclusion can be challenged only indirectly: an insufficiently supported conclusion can be evidence of an unreasonable investigation. *Hinkle*, 827 F.3d at 1303 ("[T]he question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true."). But that isn't a real substitute to challenge any legal aspect of whether Chase's determination of apparent authority is correct.

The better route, in my view, is for Milgram to sue Chase for a declaration that she doesn't owe Chase money, that Milgram and Williams never had a principal-agent relationship, and that Chase didn't reasonably rely on automated payments. With that declaration in hand, Milgram (or any litigant) would have a much

22-10250              ROSENBAUM, J., Concurring                    3

stronger cudgel with which to force a furnisher to stop reporting debt to a reporting agency. *See, e.g.*, *Losch v. Nationstar Mortg., LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (explaining that a reporting agency reported inaccurate information when it reported that a consumer had debt that had been discharged by a bankruptcy court). Or Milgram could go directly to the reporting agency with the declaration and get the reporting agency to take it off her credit history.[2] *See* 15 U.S.C. § 1681i.

---

[2] Another advantage of going to court for a declaratory judgment—or requesting that a reporting agency make this determination rather than Chase—is that the court (or the reporting agency) is neutral. In the current procedural posture, Chase is a judge in its own cause. In other words, Chase gets to decide whether Chase reasonably relied on Milgram's payments. *See Williams v. Pennsylvania*, 579 U.S. 1, 8–9 (2016) ("[N]o man can be a judge in his own case."). The conflict of interest is obvious.