*Sessa v. Trans Union, LLC*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: March 3, 2023
Decided: July 17, 2023

No. 22-87

GIA SESSA, on behalf of herself and all others similarly
situated,
*Plaintiff-Appellant*,

*v.*

TRANS UNION, LLC,
*Defendant-Appellee.*[1]

Appeal from the United States District Court
for the Southern District of New York
No. 19CV09914, Kenneth M. Karas, *District Judge.*

Before:    CABRANES, NARDINI, MERRIAM, *Circuit Judges*.

This is an appeal from an order of the District Court announcing a new, bright-line rule under which certain claims brought pursuant to the Fair Credit Reporting Act ("FCRA") would be subject to a threshold inquiry into whether an alleged inaccuracy was "legal" and therefore non-cognizable under the FCRA. We hold that the FCRA does not contemplate such a threshold inquiry; rather, an FCRA claim alleges an "inaccuracy" so long as the challenged information is objectively and readily verifiable.

Plaintiff-appellant Gia Sessa leased a Subaru Forester in November 2018. Defendant-appellee Trans Union, LLC received certain information about the lease and

---

[1] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

reported that information on Sessa's credit report. In particular, Trans Union reported that Sessa owed a "balloon payment" at the end of the lease term -- a payment that the terms of the lease did not, in fact, require. Sessa sued Trans Union under section 1681e(b) of the FCRA which requires credit reporting agencies ("CRAs"), like Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's credit report. 15 U.S.C. §1681e(b). The District Court granted Trans Union summary judgment, reasoning that Sessa's credit report could not be considered "inaccurate" under section 1681e(b) because the question of whether Sessa owed a balloon payment amounted to a legal, rather than factual, dispute.

We conclude that section 1681e(b) does not incorporate a threshold inquiry as to whether an alleged inaccuracy is "legal" or "factual" in nature. We therefore determine that the District Court erred by ending its analysis after it found that the accuracy of the reported balloon payment amounted to a legal dispute, and was therefore not actionable under section 1681e(b). We **VACATE** the District Court's order and **REMAND** for further proceedings.

VACATED AND REMANDED.

<div style="margin-left:40%">

MATTHEW W. H. WESSLER, Gupta Wessler PLLC, Washington, D.C. (Neil K. Sawhney, Gupta Wessler PLLC, San Francisco, CA; Daniel A. Schlanger, Evan S. Rothfarb, Schlanger Law Group LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant.*

MICHAEL O'NEIL, Reed Smith LLP, Chicago, IL (Albert E. Hartmann, M. Patrick Yingling, Daniel E. Alperstein, Reed Smith LLP, Chicago, IL, *on the brief*), *for Defendant-Appellee.*

</div>

SARAH A. L. MERRIAM, *Circuit Judge*:

This is an appeal from an order of the District Court announcing a new, bright-line rule under which certain claims brought pursuant to the Fair Credit Reporting Act ("FCRA") would be subject to a threshold inquiry into whether an alleged inaccuracy was "legal" and therefore non-cognizable under the FCRA. We hold that the FCRA does not

contemplate such a threshold inquiry; rather, an FCRA claim alleges an "inaccuracy" so long as the challenged information is objectively and readily verifiable.

Plaintiff-appellant Gia Sessa leased a Subaru Forester in November 2018. Defendant-appellee Trans Union, LLC received certain information about the lease and reported that information on Sessa's credit report. In particular, Trans Union reported that Sessa owed a "balloon payment" at the end of the lease term -- a payment that the terms of the lease did not, in fact, require. Sessa sued Trans Union under section 1681e(b) of the FCRA which requires credit reporting agencies ("CRAs"), like Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's credit report. 15 U.S.C. §1681e(b). The District Court granted Trans Union summary judgment, reasoning that Sessa's credit report could not be considered "inaccurate" under section 1681e(b) because the question of whether Sessa owed a balloon payment amounted to a legal, rather than factual, dispute.

We conclude that section 1681e(b) does not incorporate a threshold inquiry as to whether an alleged inaccuracy is "legal" or "factual" in nature. We therefore determine that the District Court erred by ending its analysis after it found that the accuracy of the reported balloon payment amounted to a legal dispute, and was therefore not actionable under section 1681e(b). We **VACATE** the District Court's order and **REMAND** for further proceedings.

## I. BACKGROUND

The facts set forth herein were established at summary judgment and are undisputed.

3

Sessa leased a Subaru Forester from Curry Hyundai Subaru ("Curry") for a thirty-six-month term beginning on November 1, 2018. Sessa's lease agreement indicated that $4,000.00 was the "Amount Due at Lease Signing" and $237.75 was the "Base Monthly Payment." Joint App'x at 37, 111.[2] The lease also provided that the Forester's "Residual Value" at the end of the lease term would be $19,444.07. Id. The lease gave Sessa the "option to purchase the [Forester] … at the end of the Lease Term for the Residual Value." Id.

The parties agree that in November 2018, Hudson Valley Federal Credit Union ("Hudson Valley") furnished information regarding the lease to Trans Union.[3] Although the lease gave Sessa "the option to purchase" the Forester at the end of the lease term for the residual value of $19,444.07, id. (emphasis added), the information Hudson Valley furnished to Trans Union reported that Sessa owed a balloon payment in the amount of $19,444.00, due on January 1, 2022.[4] Trans Union then reported the balloon payment

_____

[2] Sessa and Trans Union each submitted a copy of the relevant page of the lease with their summary judgment briefing. See Joint App'x at 37, 111. The copies are identical and there is no dispute regarding the language of the lease. The Court refers to the version appearing at Joint Appendix 111 throughout the remainder of this opinion, solely because that version is more legible.

[3] The lease indicates that Curry "intend[ed] to assign" the lease to Hudson Valley and Credit Union Leasing of America ("CULA"). Id. Hudson Valley is the only party alleged to have furnished information regarding the lease to Trans Union.

[4] Sessa's thirty-six-month lease term began on November 1, 2018, and would have ended on November 1, 2021. The lease states that Sessa had the "option to purchase the Vehicle . . . at the end of the Lease Term for the Residual Value," but does not state a specific date on which the lease term ends. Id. The parties agree that Hudson Valley reported to Trans Union that a balloon payment was due on January 1, 2022. The source of the January 1, 2022, date is not apparent in the record, but the date does not affect our analysis.

4

obligation, as furnished by Hudson Valley, as a debt on Sessa's credit report from December 2018 through at least 2019. Trans Union also reported that the "High Balance" of Sessa's debt related to the Forester was $25,928.60, an amount which treated the residual value of the Forester as a debt. Id. at 1278-79. The lease's plain language did not require Sessa to make a balloon payment. See id. at 111.

Sessa initially brought a variety of claims against Trans Union, Curry, Hudson Valley, and CULA;[5] all defendants other than Trans Union were dismissed by stipulation. Sessa pursued two claims against Trans Union, one under section 1681e(b) of the FCRA, and one under the parallel New York state statute colloquially known as the "NY FCRA."[6]

Sessa's complaint alleges that Trans Union violated section 1681e(b) by including the balloon payment as a debt on her credit report and by "inaccurate[ly] reporting" the lease information. Joint App'x at 33. Trans Union moved for summary judgment, arguing that "it reported [the] information accurately" because it reported precisely the information that it had received from Hudson Valley, and "any purported inaccuracy" in its report was "solely borne of legal interpretation," rendering it non-cognizable under the FCRA. Sessa v. Linear Motors, LLC, 576 F. Supp. 3d 1, 13, 14 (S.D.N.Y. 2021).

The District Court agreed. It granted Trans Union's motion for summary judgment, concluding: "CRAs cannot be held liable when the accuracy at issue requires a legal

---

[5] Sessa did not notify Trans Union about the error in reporting the balloon payment or high balance on her credit report prior to bringing suit.

[6] The language of the NY FCRA and the FCRA is substantially similar, and "the two statutes must be construed in the same way." Scott v. Real Est. Fin. Grp., 183 F.3d 97, 100 (2d Cir. 1999). Our holding is limited to the construction of the FCRA.

determination as to the validity of the debt the agency reported; conversely, CRAs can only be held liable for FCRA claims when the information reported does not match the information furnished." Id. at 12. The District Court's ruling terminated the case, and Sessa timely appealed.

## II. DISCUSSION

### A. Standard of Review

We review the District Court's grant of summary judgment de novo, "constru[ing] the evidence in the light most favorable to the" non-moving party and "drawing all reasonable inferences and resolving all ambiguities in [her] favor." Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017) (citation and quotation marks omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. Analysis

The FCRA requires: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b). A consumer harmed by a CRA's failure to follow such reasonable procedures may bring a civil action against the CRA. See, e.g., TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021). To prevail in such an action, the consumer must establish that the challenged report is inaccurate. See Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 92 (2d Cir. 2021) ("The accuracy of Shimon's credit report is fatal to his §1681e(b) claims . . . ."). In this case, the District Court focused entirely on whether the information

6

reported was inaccurate; it never addressed the question whether Trans Union followed reasonable procedures.

The District Court concluded that the term "'inaccurate' for purposes of sustaining an FCRA claim" requires that a credit report contain a factual, rather than legal, inaccuracy. Sessa, 576 F. Supp. 3d at 9. The nature of the reported balloon payment was, according to the District Court, "at its core a contractual dispute," and therefore "any purported inaccuracy -- to the extent one exists -- is solely borne of legal interpretation for which TransUnion may not be held liable." Id. at 13, 14 (citation and quotation marks omitted). The District Court announced a bright-line rule: "In sum, CRAs cannot be held liable when the accuracy at issue requires a legal determination as to the validity of the debt the agency reported; conversely, CRAs can only be held liable for FCRA claims when the information reported does not match the information furnished." Id. at 12. In holding that CRAs can be held liable only "when the information reported does not match the information furnished," the District Court improperly narrowed the scope of section 1681e(b) to cases involving transcription errors. Id. The protections of the FCRA are more expansive.

After the District Court issued its decision, this Court decided Mader v. Experian Information Solutions, Inc., 56 F.4th 264 (2d Cir. 2023). Mader held that the definition of "accuracy" under the FCRA "requires a focus on objectively and readily verifiable information." Id. at 269. The Mader Court concluded: "The 'inaccuracy' Mader alleges does not meet this statutory test because it evades objective verification." Id. Thus, reported information is actionably "inaccurate" only if that information is objectively and readily verifiable by the CRA. Trans Union contends that Mader supports the District Court's

7

holding that a "CRA[] cannot be held liable when the accuracy at issue requires a legal determination as to the validity of the debt." Trans Union's Rule 28(j) Letter at 1 (Jan. 10, 2023), ECF No. 153 (citation to record and quotation marks omitted). Sessa, by contrast, argues that Mader supports her position because it focuses not on the allegedly legal nature of the claimed inaccuracy, but on whether the alleged inaccuracy "evades objective verification." Sessa's Rule 28(j) Letter at 1 (Jan. 11, 2023), ECF No. 160 (citation to Mader and quotation marks omitted). We agree with Sessa.

The allegedly inaccurate information at issue in Mader was related to a student loan debt. See Mader, 56 F.4th at 266. The plaintiff in Mader had filed for bankruptcy and "the bankruptcy court issued a final decree of discharge, which stated that Mader was released from all dischargeable debts." Id. (citation to record and quotation marks omitted). Mader contended that this decree released his student loan debt; however, as an attachment to the decree noted, "debts for most student loans are not discharged." Id. (citation to record and quotation marks omitted). There was therefore a live legal dispute regarding whether Mader in fact still owed the student loan debt reported by the CRA. The Court found that the validity of that debt was not "objectively and readily verifiable," holding: "The bespoke attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt means that its status is not sufficiently objectively verifiable to render Mader's credit report 'inaccurate' under the FCRA." Id. at 269, 270.

The District Court, without the benefit of Mader, held that the FCRA incorporates a threshold inquiry as to whether a claimed error is factual or legal in nature. That was error. The question of whether a debt is objectively and readily verifiable will sometimes,

8

as it did in <u>Mader</u>, involve an inquiry into whether the debt is the subject of a legal dispute. There, the issue of whether Mader's debt had been discharged presented an "unresolved legal question" under bankruptcy law, which "render[ed] his claim non-cognizable under the FCRA." <u>Id.</u> at 270. But that does not mean that <u>any</u> dispute that might arguably turn on a question of law is non-cognizable under the FCRA. As the <u>Mader</u> Court explained, CRAs may be "required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." <u>Id.</u>

In sum, there is no bright-line rule providing, as the District Court concluded, that only purely factual or transcription errors are actionable under the FCRA.[7] Rather, in determining whether a claimed inaccuracy is potentially actionable under section 1681e(b), a court must determine, <u>inter alia</u>, whether the information in dispute is "objectively and readily verifiable." <u>Id.</u> at 269.

We hold, in accordance with <u>Mader</u>, that allegedly inaccurate information reported on a consumer's credit report must be objectively and readily verifiable to be actionable under section 1681e(b). We contribute to the law as stated by <u>Mader</u> to clarify that there is no threshold inquiry under the FCRA as to whether any purportedly inaccurate information

---

[7] We note that even if the District Court had been correct that the legal or factual nature of an inaccuracy was decisive, there does not appear to be any legitimate <u>legal</u> dispute regarding the inaccuracy of the reported balloon payment. There simply was no balloon payment due -- as a matter of <u>fact</u>. The lease provided for an option to purchase, not a required balloon payment. Indeed, counsel for Trans Union conceded at oral argument that neither Curry nor Hudson Valley would have had a colorable legal claim against Sessa for recovery of the amount reported as a required balloon payment. The statement on Sessa's credit report that she owed a balloon payment was, therefore, <u>factually</u> inaccurate. Thus, under the District Court's mistaken approach, the reported balloon payment might have been actionable under section 1681e(b).

is legal or factual in nature. Indeed, the accuracy of the information reported, and whether that information is objectively and readily verifiable, are not the only inquiries under section 1681e(b). Section 1681e(b) is violated only when a CRA has failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b); see also Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 105 (2d Cir. 1997) (affirming grant of summary judgment in favor of a CRA on a section 1681e(b) claim where the CRA reported inaccurate information, but had followed reasonable procedures to assure accuracy). The District Court never addressed that question. We therefore remand to permit the District Court to conduct the analysis in the first instance.

## III. CONCLUSION

For the reasons stated, we **VACATE** the District Court's judgment of dismissal and **REMAND** for further proceedings consistent with this opinion.