[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11014

_____

TANETHIA HOLDEN,
an individual,

Plaintiff-Appellant,

*versus*

HOLIDAY INN CLUB VACATIONS INCORPORATED,
a foreign for-profit corporation,
f.k.a. Orange Lake Country Club, Inc.,

Defendant-Appellee,

EXPERIAN INFORMATION SOLUTIONS, INC.
a foreign for-profit corporation,

2                    Opinion of the Court                    22-11014

                                                    Defendant.

                    _____

            Appeal from the United States District Court
                  for the Middle District of Florida
            D.C. Docket No. 6:19-cv-02373-CEM-EJK

                    _____


                    _____

                          No. 22-11734

                    _____

MARK S. MAYER,
an individual,

                                          Plaintiff-Appellant,

*versus*

HOLIDAY INN CLUB VACATIONS INCORPORATED,
a foreign for-profit corporation f.k.a. Orange Lake
Country Club, Inc.,

                                          Defendant-Appellee,

EXPERIAN INFORMATION SOLUTIONS, INC.,
a foreign for-profit corporation,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-02283-GAP-EJK

_____

Before BRANCH, LUCK, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Our country's credit reporting system relies on accurate reporting both by consumer reporting agencies and entities, known as furnishers, that provide information to those agencies about consumers' debts. Under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2, furnishers must conduct a reasonable investigation when a consumer challenges the accuracy of the information.

In this consolidated appeal, we face the question of what amounts to an actionable inaccuracy under the FCRA. Two consumers, Tanethia Holden and Mark Mayer, entered into purchase agreements for timeshares with Holiday Inn Club Vacations Inc. Holden and Mayer stopped making monthly payments and

considered their agreements to be canceled.  Holiday disagreed and reported their debts to Experian—a consumer reporting agency. After unsuccessful attempts to resolve their disputes with Holiday,[1] Holden and Mayer filed individual FCRA actions alleging that Holiday violated § 1681s-2 by inaccurately reporting that they owed debts and that Holiday failed to reasonably investigate their disputes.  The District Courts granted summary judgment for Holiday in both cases, finding the alleged inaccuracies were legal disputes and therefore not actionable under § 1681s-2.

After careful review, and with the benefit of oral argument, we affirm—though for a different reason.  Whether the alleged inaccuracy is factual or legal is beside the point.  Instead, what matters is whether the alleged inaccuracy was objectively and readily verifiable.  Here it was not.  Thus, Mayer and Holden had no actionable FCRA claims.

## I.  Background

Holiday is a timeshare company.  Its customers pay to use one or more of its vacation properties for a few weeks per year. Holiday's customers also agree to pay homeowner association dues that cover maintenance and property taxes.  Like many of Holiday's customers, Holden and Mayer financed their timeshares

---

[1] Holden and Mayer also claimed that Experian violated the FCRA by failing to ensure that their credit reports were accurate.  Those claims are not at issue because Holden and Mayer settled and dismissed their claims against Experian.

through Holiday.[2]  Because their cases differ slightly, we recap the rest of Holden's and Mayer's cases individually.

### A. Holden's Case

On June 25, 2016, Holden entered into a purchase agreement with Holiday to buy a timeshare in Las Vegas.  The same day, Holden obtained a promissory note to finance most of the purchase.  The note required Holden to make 120 monthly payments.  Also on the same day, Holden executed a mortgage securing payment of the note.

Among other conditions, the closing and title provision of the purchase agreement stated that the transaction would not close until Holden made the first three monthly payments and Holiday recorded the declaration in Holden's name.  The purchase agreement also included a purchaser's default provision.[3]  That provision stated, "[u]pon [Holden's] default or breach of any term or condition of this Agreement, all sums paid hereunder by [Holden] shall be retained by [Holiday] as liquidated damages, not as a penalty, and the parties hereto shall be relieved from all obligations

---

[2] Technically, Holden and Mayer financed their timeshares through Wilson Resort Finance, LLC.  However, as the District Court in Holden's case noted, the parties treat Holiday and Wilson as the same entity.

[3] The parties and the District Courts sometimes refer to the purchaser's default provision as the "liquidated damages provision," "liquidation provision," or "liquidation clause."  We use "purchaser's default provision" since that is how it appears in the purchase agreements.

hereunder." The agreement also said that "[a]ny Note Payments made by [Holden] prior to closing shall be subject to the default provisions."

After making her third payment, Holden defaulted and hired an attorney. On March 9, 2017, Holden's attorney notified Holiday that Holden "no longer intend[ed] to make further payments" because "she allege[d] her sales transaction was fraudulently represented at the time of sale and/or another reason exist[ed] for nonpayment, such as [her] inability to continue to fund the purchase." Two weeks later, Holden's attorney sent another letter. In the second letter, Holden tried to cancel the agreement citing language from the closing and purchaser's default provisions.

Holiday disagreed that the agreement was canceled. On June 19, 2017, it recorded the timeshare deed. It also reported the delinquent debt to Experian. In response, Holden's attorney sent three dispute letters to Holiday. Holiday investigated the dispute but determined that its reporting was accurate because it concluded that Holden was still obligated under the note.

Holden then sued Holiday alleging various violations of Florida law and the FCRA. Pertinent here is Count IV of Holden's complaint. Under Count IV, Holden claimed that Holiday reported inaccurate information to Experian, failed to conduct an appropriate investigation, and failed to correct the inaccuracies—all of which were required under the FCRA. The parties later cross-

moved for partial summary judgment on Count IV—the only remaining claim against Holiday.[4]

The District Court granted Holiday's motion and denied Holden's. The court reasoned that

> a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete.

*Holden v. Holiday Inn Club Vacations Inc.*, No. 6:19-cv-2373-CEM-EJK, 2022 WL 993572, at *2 (M.D. Fla. Feb. 28, 2022) (quoting *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)). And citing our unpublished opinion in *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481–82 (11th Cir. 2020), it reasoned that "[g]enerally, unresolved contract disputes constitute legal disputes and not factual inaccuracies." *Id.* at *3. Because there remained a legal dispute on whether Holden still owed a debt, the court found that Holden's FCRA claim must fail. Holden timely appealed.

---

[4] Holiday offered judgment on Holden's other claims under Federal Rule of Civil Procedure 68, which Holden accepted. On June 22, 2020, the District Court entered judgment for Holden on those claims.

### B. Mayer's Case

On September 15, 2014, Mayer entered into a purchase agreement to buy a timeshare with Holiday in Cape Canaveral. That purchase agreement contained nearly identical closing and default provisions as Holden's agreement. Like Holden, Mayer executed a promissory note to finance the purchase. Under the note's terms, he too was required to make 120 monthly payments.

On July 13, 2015, Holiday recorded the deed in Mayer's name. Meanwhile, Mayer made timely monthly payments until May 2017.[5] When Mayer stopped making payments, Holiday reported the delinquency to Experian. Around August 17, 2019, Mayer obtained a copy of his credit report from Experian where he learned that Holiday had reported a past-due balance. In response, Mayer sent multiple letters to Experian disputing the debt because he believed the agreement was terminated under the default provision. Experian communicated each dispute to Holiday, who certified that the information was accurate.

Mayer then sued Holiday. In his sole count against Holiday, Mayer alleged that Holiday violated 15 U.S.C. § 1681s-2(b) of the FCRA because Holiday furnished inaccurate information and failed to "fully and properly re-investigate" the disputes. In turn, Holiday moved to dismiss, and the District Court partially granted

---

[5] Mayer made a partial monthly payment in June 2017, but he made his last full monthly payment in May 2017.

Holiday's motion.[6]  In permitting Mayer's claims to proceed, the District Court read our decision in *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021), to mean that a disputed legal issue can change into an undisputed fact.  *Mayer v. Holiday Inn Club Vacations Inc.*, No. 6:20-cv-2283-GAP-EJK, 2021 WL 2942654, at *3 (M.D. Fla. June 8, 2021).  Given that Mayer cited two other cases in which courts ruled against Holiday in nearly identical circumstances, the District Court found that Mayer had "raised a meritorious factual dispute as to the accuracy of his credit report."  *Id.*  Holiday then moved for partial summary judgment as to Count I.

As in Holden's case, the District Court also granted Holiday's motion.  The court noted that although it permitted Mayer's claims to proceed under *Losch*'s rationale, it now faced a different picture.  Though Mayer had cited two unfavorable decisions to Holiday, Holiday presented "a string of cases where courts ha[d] sided with its interpretation of the contract" that the default provision did not excuse Mayer's obligation to keep paying.  The court found that the "conflicting outcomes in these cases only serve[d] to emphasize that the underlying issue here [was] a legal dispute, not a factual one."  Relying on *Batterman*, the court therefore found that Mayer's claim was not actionable under the FCRA.  Mayer timely appealed.

---

[6] The District Court dismissed Mayer's claims as they related to factual inaccuracies with payments he made in 2016 because he failed to allege that he disputed the accuracy of those payments with Experian.

## II. Legal Standards

"We review grants of summary judgment de novo." *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1217 (11th Cir. 2023) (per curiam). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting *Brown v. Nexus Bus. Sols., LLC*, 29 F.4th 1315, 1317 (11th Cir. 2022)); *see also* Fed. R. Civ. P. 56(a). "On summary-judgment review, we view all evidence in 'the light most favorable to the nonmoving party' and draw 'all justifiable inferences in that party's favor.'" *Milgram*, 72 F.4th at 1217 (quoting *Brown*, 29 F.4th at 1317). "Likewise, we exercise de novo review over questions of statutory interpretation." *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1259 (11th Cir. 2020).

## III. Discussion

On appeal, Holden and Mayer argue that the District Courts erred in finding that FCRA claims based on legal disputes—such as theirs—are not actionable. They contend that the District Courts' interpretation of the FCRA conflicts with the statute's text, structure, and purposes. According to Holden and Mayer, the FCRA does not distinguish between factual and legal disputes.

Holiday asserts that disputed legal issues based on consumer allegations—like contractual interpretations that have not been resolved by a court—are not actionable under the FCRA. It explains that the existence of a legal conclusion about the invalidity of the

debt is a necessary condition precedent to an FCRA claim of this type.

Neither party has it right, though we agree with Holiday that Holden's and Mayer's claims are not actionable. We split our discussion into two parts. First, we describe how the FCRA operates. And second, we explain why no FCRA claims exist here.

### A. The Fair Credit Reporting Act

"Congress enacted the [FCRA] to protect consumers from unfair reporting methods while also ensuring that the credit system would retain the accuracy required by the banking system to efficiently allocate credit." *Milgram*, 72 F.4th at 1217; *see* 15 U.S.C. § 1681. The FCRA imposes two duties on furnishers. First, "furnishers have a duty not to furnish information about a consumer to a reporting agency if the furnisher 'knows or has reasonable cause to believe' that the information is inaccurate." *Milgram*, 72 F.4th at 1217 (quoting 15 U.S.C. § 1681s-2(a)(1)(A)). Second, furnishers must take certain actions once notified that a consumer disputes the accuracy or completeness of his or her furnished information. 15 U.S.C. § 1681s-2(b).

"Consumers can dispute the accuracy of the information in their credit reports in one of two ways." *Milgram*, 72 F.4th at 1217. Consumers may either dispute the information "(1) directly with the furnisher or (2) indirectly with the credit reporting agency." *Id.*; *see also* 15 U.S.C. § 1681s-2(a)(8) (directing the CFPB to promulgate regulations for direct disputes); 12 C.F.R. § 1022.43

(regulations related to direct disputes); 15 U.S.C. § 1681i(a)(2) (relating to indirect disputes).

When a furnisher is notified of such a dispute, "the furnisher must (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the [consumer reporting agency]; and (3) report the results of the investigation to the [consumer reporting agency]." *Felts*, 893 F.3d at 1312; 15 U.S.C. § 1681s-2(b)(1). "If the furnisher finds, following an investigation, that an item of information disputed by a consumer is incomplete, inaccurate, or cannot be verified, the furnisher must either modify, delete, or permanently block reporting of that information." *Felts*, 893 F.3d at 1312; 15 U.S.C. § 1681s-2(b)(1)(E). And, "with respect to information the furnisher finds to be inaccurate or incomplete, the furnisher also must report those results to all other [consumer reporting agencies]." *Felts*, 893 F.3d at 1312; 15 U.S.C. § 1681s-2(b)(1)(D).

"Consumers have no private right of action against furnishers for reporting inaccurate information to [consumer reporting agencies] regarding consumer accounts. Instead, the only private right of action consumers have against furnishers is for a violation of § 1681s-2(b) . . . ." *Felts*, 893 F.3d at 1312 (citing 15 U.S.C. § 1681s-2(c)(1)).

B. *The Alleged Inaccuracies Are Not Objectively and Readily Verifiable*

With that framework in mind, we now explain why Holden's and Mayer's FCRA claims are not actionable. "To succeed on an FCRA claim, a plaintiff must establish (at least) two

things." *Milgram*, 72 F.4th at 1218. First, a plaintiff must "identify[] inaccurate or incomplete information that the furnisher provided to the reporting agency." *Id.* "And second, to prove an investigation was unreasonable, a plaintiff must point out 'some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.'" *Id.* (emphasis omitted) (quoting *Felts*, 893 F.3d at 1313). Because Holden and Mayer cannot identify inaccurate or incomplete information that Holiday provided to the consumer reporting agencies, they cannot prevail.[7]

This case turns on the meaning of "accuracy" in the FCRA. As we have explained, the FCRA "requires 'maximum possible accuracy.'" *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020). "The words 'maximum' and 'possible' mean 'greatest in quantity or highest in degree attainable' and 'falling or lying within the powers' of an agent or activity." *Id.*

---

[7] To be clear, Holden and Mayer do not argue in their briefs before us that the information Holiday reported was incomplete. At best, they make a passing reference that the "question before the district court on summary judgment should have been whether the plaintiffs demonstrated that Holiday . . . furnished inaccurate or incomplete information." Plaintiffs-Appellants' Consolidated Opening Br. at 29, *Holden v. Holiday Inn Club Vacations Inc.*, No. 22-11014 (11th Cir Dec. 9, 2022), 2022 WL 17843086, at *29. "Merely making passing references to a claim . . . is insufficient. Instead, the party must clearly and unambiguously demarcate the specific claim and devote a discrete section of his argument to it so the court may properly consider it." *Brown v. United States*, 720 F.3d 1316, 1332 (11th Cir. 2013) (citation omitted). Holden and Mayer have therefore forfeited any argument that the information was incomplete.

(first quoting *Maximum*, *Webster's Third New International Dictionary* (3d ed. 1961); and then quoting *Possible*, *Webster's Third New International Dictionary* (3d ed. 1961)). "'Accuracy,' in turn, means 'freedom from mistake or error.' And being free from 'mistake' or 'error' means being free from 'a misunderstanding of the meaning or implication of something' and not deviating from 'truth or accuracy.'" *Id.* at 1251–52 (first quoting *Accuracy*, *Webster's Third New International Dictionary* (3d ed. 1961); then quoting *Mistake*, *Webster's Third New International Dictionary* (3d ed. 1961); and then quoting *Error*, *Webster's Third New International Dictionary* (3d ed. 1961)) (other citations omitted).[8]

We have also stated that "when evaluating whether a report is accurate under the [FCRA], we look to the objectively reasonable interpretations of the report." *Id.* at 1252. Putting this altogether, "a report must be factually incorrect, objectively likely to mislead its intended user, or both to violate the maximal accuracy standard of the [FCRA]." *Id.*; *see also Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023) ("[A]n FCRA claim alleges an 'inaccuracy' so long

---

[8] 12 C.F.R. § 1022.41(a) also defines "accuracy" as

> meanin[ing] that information that a furnisher provide[d] to a consumer reporting agency about an account or other relationship with the consumer correctly:
>
> (1) Reflect[ed] the terms of and liability for the account or other relationship;
> (2) Reflect[ed] the consumer's performance and other conduct with respect to the account or other relationship; and
> (3) Identifie[d] the appropriate consumer.

as the challenged information is objectively and readily verifiable.").

The problem for Holden and Mayer is that the alleged inaccurate information is not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer. It may be true, as some of our sister circuits have reasoned, that "the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than [a consumer reporting agency] does." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009); *accord Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 271 (2d Cir. 2023). If so, that would mean that the FCRA "will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022). And we agree that "furnishers *are* qualified and obligated to assess issues such as whether debts are actually due and/or are collectible," as the Consumer Financial Protection Bureau stresses in its amicus brief. Brief for Consumer Financial Protection Bureau as Amici Curiae Supporting Appellants at 22, *Holden v. Holiday Inn Club Vacations Inc.*, No. 22-11014 (11th Cir. Dec. 16, 2022), 2022 WL 17843088, at *22. But that *is* what Holiday did. Holden and Mayer just disagree with Holiday's assessment that the debt was due and collectible.

This is not to say the furnishers "are never required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." *Mader*,

56 F.4th at 270; *see, e.g.*, *Losch*, 995 F.3d at 944–46 (holding that misreporting the clear effect of a bankruptcy discharge order on certain types of debt is a cognizable inaccuracy under the FCRA). "As cases like *Losch* . . . show, if a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports." *Mader*, 56 F.4th at 271.

Still, contrary to Holden and Mayer's contentions, the resolution of *this* contract dispute is not a straightforward application of law to facts. As the *Mayer* District Court noted, Florida state courts that have reviewed timeshare agreements—like the ones here—have come to conflicting conclusions about whether the default provisions excused a consumer's obligation to keep paying. *Compare Holiday Inn Club Vacations v. Granger*, No. 2018-CA-011778-O, 2021 WL 6254518, at *3 (Fla. 9th Cir. Ct. Mar. 15, 2021) (awarding Holiday a deficiency judgment against defendants based on a similar timeshare agreement), *with Orange Lake Country Club, Inc. v. Arndt*, No. 2016-CA-006342-O, ¶ 5 (Fla. 9th Cir. Ct. Aug. 14, 2019) (finding that Holiday (formerly Orange Lake Country Club) was not entitled to a deficiency judgment under an identical provision).

Although "[t]he ultimate resolution of this case is surely frustrating for some consumers," consumers in Holden and Mayer's position are not without recourse. *Milgram*, 72 F.4th at 1221 (Rosenbaum, J., concurring). As noted by Judge Rosenbaum's concurrence in *Milgram*, consumers in Holden's and Mayer's shoes could

22-11014               Opinion of the Court                      17

sue a furnisher for a declaration that they no longer owed a debt.[9] *Id.* at 1222. "With that declaration in hand, [a consumer] would have a much stronger cudgel with which to force a furnisher to stop reporting [a] debt to a reporting agency." *Id.* Or a consumer "could go directly to the reporting agency with the declaration and get the reporting agency to take it off [his or] her credit history." *Id.*; *see also* 15 U.S.C. § 1681i.[10]

---

[9] Holden and Mayer made one additional argument point at oral argument: because there was a bona fide dispute, it was misleading for Holiday not to report the dispute. True, "other circuits . . . have allowed a consumer's claim to proceed against a furnisher on the basis of misleading statements or omissions," even where the information reported "was technically accurate." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1318 (11th Cir. 2018). For example, the Fourth Circuit has stated that a consumer may have an FCRA claim against a furnisher who reports a debt "without *any* mention" that the consumer disputed the debt. *See, e.g.*, *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008) ("The jury could reasonably conclude that [the furnisher's] decision to report the debt without *any* mention of a dispute was 'misleading . . . .'").

But Holden's and Mayer's complaints contain no such allegation. And although Holden and Mayer cited *Saunders* in their summary judgment briefing, they did not do so for this proposition. Nor does this argument appear in their briefing before us. Instead, Holden and Mayer made this argument for the first time at oral argument. In the absence of briefing on this issue—either before the District Courts or us—we decline to address whether such a claim would be viable here. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (holding that arguments that were not raised at the district court in the first instance cannot be raised on appeal); *United States v. Cuchet*, 197 F.3d 1318, 1321 n.6 (11th Cir. 1999) (declining to address an argument made for the first time at oral argument).

[10] Under 15 U.S.C. § 1681i(a)(1)(A),

## IV.  Conclusion

We decline to impose a bright-line rule "that only purely factual or transcription errors are actionable under the FCRA." *Sessa*, 74 F.4th at 43.  "Rather, in determining whether a claimed inaccuracy is potentially actionable under [§ 1681s-2], a court must determine, *inter alia*, whether the information in dispute is 'objectively and readily verifiable.'" *Id.* (quoting *Mader*, 56 F.4th at 269).  Because the information in dispute here fails to meet that standard, we hold that Mayer and Holden do not have actionable FCRA claims against Holiday.  Accordingly, we affirm the District Courts' judgments.

**AFFIRMED**.

---

if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable re-investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.